John DORSEY, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 63217.

Missouri Court of Appeals, Western District.

March 8, 2005.

Elizabeth Unger Carlyle, Lee's Summit, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Deborah Daniels, Asst. Attorney General, Jefferson City, for respondent.

Before JAMES M. SMART, JR., P.J., JOSEPH M. ELLIS, and LISA WHITE HARDWICK, JJ.

JAMES M. SMART, JR., Judge.

John Dorsey appeals the motion court's denial of his Rule 29.15 motion for post-conviction relief following an evidentiary hearing. Because we find that Dorsey's retained trial counsel rendered constitutionally ineffective assistance, the judgment is reversed.

## Factual and Procedural Background

Appellant John Dorsey was originally charged with ten crimes: kidnapping, sexual abuse, attempted forcible rape, forcible sodomy, first degree robbery, and five corresponding counts of armed criminal ac-

tion. He entered a "not guilty" plea as to all counts. He was tried before a jury, and the following transpired:

The victim testified that on the evening of the crime, she was on her way to her cousin's house in Kansas City when she ended up on a dead-end street and soon became lost. She stopped to ask for directions from three men on the street. Dorsey approached the driver's side of the car, pulled a butcher knife out of his pocket, and ordered her to let him in the car. Dorsey walked around the front of the car and got in on the passenger side. He asked the victim for money, and when she stated that she had none, he ordered her to drive to a remote location. He then forced her at knife point to perform oral sex on him. Dorsey then ordered her out of the car, after which he started the car and drove off. The victim then reported to police a car-jacking and the taking of the car. DNA testing established that a semen stain on the victim's clothing came from Dorsey.

Dorsey was represented by retained counsel. Dorsey testified in his own defense. He testified that the victim actually stopped to ask about getting some drugs, and he told her that he could get her some. He said she voluntarily let him in the car. He said they negotiated about the drugs, and as a part of that the victim voluntarily agreed to a sex act. He said he provided some cocaine in return for the sex act. He acknowledged that he drove off in the car, but said that the victim had "rented" him the car. He acknowledged later selling the car to someone else for crack cocaine. Dorsey denied wielding a knife or any other weapon during the encounter.

Dorsey acknowledged telling the victim during the sex act, when she acted like she might stop, "Damn, you've got me f——d up. Go on and do this or you could get f——d up." He said that he "didn't do

anything to make her do [the sex act], but that [he] probably said something [he] should not have said at the time."

In closing argument, defense counsel told the jury that he believed they would convict Dorsey of forcible sodomy because "[Dorsey] admitted to doing that, folks." Counsel then recommended that the jury sentence him to seven years on that charge.[1] He asked that the jury acquit Dorsey of the other charges. He also concluded his argument by literally asking the jury to return a verdict of guilty on the sodomy charge. "I'm going to ask you to return a verdict of guilty on the sodomy count for seven years...." He asked that the jury find Dorsey not guilty of the other charges.

The case was submitted to the jury. During the first day of deliberations, the jurors discussed the matter of the victim getting lost. Apparently, there was some concern about the credibility of the victim's comments as to how she encountered Dorsey. The next morning, one of the jurors surreptitiously traveled to the crime scene to investigate the victim's story about getting lost. That juror also got lost in the same area. When he returned to deliberations that day, he informed the other jurors of his trip and of the fact that he, too, got lost. Later that same day, the jury convicted Dorsey of forcible sodomy, robbery, and two armed criminal action counts. He was acquitted of kidnapping, sexual abuse, attempted forcible rape, and three counts of armed criminal action.

Immediately following the verdict, the judge's law clerk and the assistant prosecutor both learned of the one juror's trip to the crime scene and discovered that he had informed all the other jurors about it. Both submitted written memos to the court with regard to their knowledge about the alleged juror misconduct. Copies of these memos were provided to counsel and placed in the court's file. The probation officer who conducted Dorsey's pre-sentence investigation also sent a letter to the prosecutor stating that the same juror had called the victim's family after the trial and said that he had visited the crime scene and that he "totally believed" the victim's story.[2]

Trial counsel mentioned the juror misconduct issue, along with other issues, in a motion for new trial. The motion stated simply, "There was jury misconduct when Juror 2, Farquhar, went to view the scene and reported back to the jury that he too had been lost and believed the victim." The motion was not supported by any documentation except for a letter from the officer conducting the pre-sentence investigation about the phone call from the juror to the victim's home.

The motion for new trial was filed seven days late. The trial court recited at Dorsey's sentencing hearing that, despite the untimeliness of the motion, he considered the motion on its merits. Counsel did not offer any evidence or argument with regard to the juror misconduct issue. He informed the court he would stand on the written motion. The trial court denied the

---

1. Dorsey was charged with forcible sodomy, aggravated by use of a dangerous instrument, which calls for a minimum sentence of 10 years. The State, however, had incorrectly drawn the instruction to allow for sentence of less than 10 years.

2. According to that letter, a jury member contacted the victim's mother after the trial and

stated that "he could not continue on with his life until he let her know that he understood how she felt." The juror said he went to the scene of the offense and "tried to follow the streets that [the victim] followed." He said he "wanted [the victim] to know that he totally believed her."

motion for new trial both as untimely and as without merit.

In accordance with the jury's recommendation, the court sentenced Dorsey to twelve years for forcible sodomy, ten years for robbery, and three years for each armed criminal action count. The robbery and armed criminal action sentences are to be served concurrently and are consecutive to the sentence for forcible sodomy.

The only point raised on direct appeal was that the trial court erred in failing to instruct on the lesser-included offense of second-degree robbery. The court's denial of the juror misconduct claim was not appealed. Dorsey's convictions were affirmed by this court pursuant to Rule 30.25(b) in *State v. Dorsey*, 70 S.W.3d 552 (Mo.App.2002).

### The Post–Conviction Motion

Dorsey filed a *pro se* motion for post-conviction relief pursuant to Rule 29.15. Counsel was appointed, and an amended motion was timely filed. The motion raised six claims, including claims of ineffective assistance of trial counsel for (1) failure to file a timely motion for new trial; (2) failure to present evidence of jury misconduct; and (3) arguing before the jury that the defendant was guilty of forcible sodomy.

An evidentiary hearing was held before the motion court judge, who also had been the trial and sentencing judge. Both Dorsey's trial counsel and appellate counsel testified at the hearing. The juror who traveled to the crime scene and two other jurors also testified. Dorsey presented the testimony of the law clerk and presented the memos from the law clerk and the assistant prosecutor with regard to the juror misconduct issue. The motion court denied relief.

■ Initially, we consider the significance of the untimeliness of the motion for new trial. A motion for new trial must be filed within fifteen days of the verdict. Rule 29.11(b). The court may grant an extension of the time, for a period not to exceed ten days. *Id.* In this case, the court had already granted the ten-day extension. The motion was then filed seven days after the conclusion of the extension, or thirty-two days after the verdict.

The trial court had no authority to act on a motion for new trial filed thirty-two days after the verdict. *See State v. Jackson*, 925 S.W.2d 856, 860 (Mo.App.1996); *State v. Garner*, 976 S.W.2d 57, 60 (Mo.App.1998). The court also lacked authority to order a new trial even on its own initiative more than thirty days after the verdict. *See* Rule 29.13. Thus, the late filing of the motion for new trial in this case was so late as to preclude the court from granting relief even if the court at that point believed there were good grounds to do so.

Trial counsel's testimony at the post-conviction hearing concerning the juror misconduct issue did not inspire confidence. Counsel did not offer a strategic reason for failing to conduct his own investigation of the juror misconduct issue. Counsel offered no testimony that he legally researched the juror misconduct issue, or that he had a strategic reason for failure to present evidence and legal authorities in support of the motion. *Appellate* counsel testified that she had no knowledge of the memoranda supporting the juror misconduct reference in the motion for new trial because the law clerk memorandum and the assistant prosecutor memorandum were not attached to the motion for new trial. Appellate counsel also testified that if she had known of the existence of these documents, she would have raised the matter of juror misconduct on direct

appeal even though (because of the untimeliness of the motion for new trial) it would have been reviewable only for plain error under Rule 30.20.

When questioned about his statement urging the jury to find Dorsey guilty of forcible sodomy, defense counsel testified that he believed the evidence supported a finding of guilt on that charge. He stated that his trial strategy was to maintain his credibility with the jury by giving them something to convict Dorsey of in hopes they would acquit on the other charges.

The motion court entered its findings of fact, conclusions of law, and judgment, denying Dorsey's claims for post-conviction relief. This appeal follows.

## Standard of Review

■ Our review is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k). Findings and conclusions are clearly erroneous only if, after review of the entire record, the court is left with a definite and firm impression that a mistake has been made. *Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000). The movant bears the burden of proving his post-conviction claims by a preponderance of the evidence. Rule 29.15(i).

## Arguments

Dorsey brings five claims of error on appeal: two relate to ineffective assistance of trial counsel, one relates to ineffective assistance of appellate counsel, and two are allegations of post-conviction court error. Because we find that Dorsey's claims of ineffective assistance of trial counsel warrant a new trial, it is unnecessary to address his other arguments.

## Ineffective Assistance

■ In his first claim, Dorsey argues that the motion court clearly erred in finding that he was not prejudiced by trial counsel's ineffectiveness in failing to timely file a motion for new trial. In a related argument, Dorsey contends that the motion court clearly erred in failing to rule on his claim that trial counsel was ineffective in failing to present evidence of juror misconduct at the new trial hearing. We will consider these interconnected arguments together.

■ To prevail on a claim of ineffective assistance of counsel, the movant must show: (1) that counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances, and (2) his defense was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). With respect to the first prong, the movant must establish that counsel's performance fell below an objective standard of reasonableness. *Id.* at 688–89, 104 S.Ct. 2052. There is a strong presumption that counsel provided competent assistance. *Deck v. State*, 68 S.W.3d 418, 425 (Mo. banc 2002). To satisfy the second prong, the movant must show that there is a "reasonable probability" that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 426. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052).

The motion court found that counsel's failure to timely file the motion for new trial fell below the "objective standard of reasonableness" but concluded that there was "no proof of prejudice." The motion court reasoned: "If the Motion for New Trial had been timely filed and a record made at the motion for new trial hearing

like the one made in this case, I would have denied relief." Although neither party addresses the issue of whether the trial court could have ordered a new trial thirty-two days after the verdict, it appears to us that, under Rule 29.13, as already noted, that the court was without such authority. *See State v. Magee*, 911 S.W.2d 307, 311–12 (Mo.App.1995). Thus, even though the trial court believes it would not have granted relief, it also is apparently true that the court *could not* have granted relief.

At the *post-conviction* hearing, Dorsey presented the following evidence. Juror Farquhar testified that before returning to court for the last day of deliberations, he went to the scene of the incident. He too got lost. On arrival at the courthouse after his trip to the scene, he informed the other jurors about his trip and about getting lost. Over objection, he testified that he did not think this experience influenced him or the other jurors. He also stated that he was unaware that he should not have gone to the scene when he made his visit. The jury foreman testified that when he heard Juror Farquhar's statement, he immediately told the other jurors that the visit was improper and they should not consider it.

Another juror testified that she remembered Juror Farquhar telling them about his visit, but she did not recall the jury foreman telling the jury not to consider it. Dorsey presented the law clerk's testimony, and Dorsey introduced the law clerk's memo to the trial judge concerning the incident. Movant Dorsey also offered the letter from the assistant prosecutor (describing her conversation with Juror Farquhar) and the probation officer's letter concerning the telephone call from Juror Farquhar.

The juror's misconduct in this case is strikingly similar to that in *Travis v.*

*Stone*, a wrongful death civil case, in which a juror traveled to the scene of the accident. 66 S.W.3d 1, 3 (Mo. banc 2002). Here, as in *Travis*, the evidence presented to the trial court clearly established that jury misconduct had occurred. Once jury misconduct is established, prejudice is presumed, and the burden shifts to the respondent to demonstrate that the misconduct was not prejudicial. *Id.* at 4 (*citing Middleton v. Kansas City Pub. Serv. Co.*, 348 Mo. 107, 152 S.W.2d 154 (1941)). The *Travis* Court noted:

> This is not a case in which a juror just happened to drive by an accident scene, without making specific observations, where the scene was on the juror's normal route. This is a case in which the juror specifically had in mind the purpose of making observations ... in order to utilize those observations in deciding the case. .... Despite her assertion that they made no difference, she admitted that they helped her to understand the testimony, which necessarily involved reconciling the testimony of the two competing experts.

*Id.* at 6. Even though the juror in *Travis* had not communicated the results of her visit to the scene to her fellow jurors, a new trial was granted because the visit would likely have had a subtle effect on her deliberations. *Id.* The Court stated: "In such a case ... the presumption of prejudice is so strong that it can rarely be overcome by statements of the juror tending to minimize the effect of this conduct." *Id.* Although *Travis v. Stone* had not been decided at the time of Dorsey's trial, it was consistent with precedent and relied on precedent which had been decided before Dorsey's trial. *See, e.g., Middleton,* 348 Mo. 107, 152 S.W.2d 154. Here, where *all* of the jurors heard about the juror's experience, it is even *less* likely than in *Travis* that the misconduct had no effect.

According to the State, *Travis* is distinguishable because the evidence gathered there "pertained to a critical issue in the case." 66 S.W.3d at 6. The State argues that whether or not the victim was actually lost when she encountered Dorsey was not critical to determining his guilt. Here, the juror testified that he visited the scene only out of curiosity and that he had already determined that it was easy to get lost in that neighborhood. Another juror testified that she and other jurors did not believe that the victim was actually lost on the night of the crime, but still voted to convict. Thus, the State argues, Dorsey was not prejudiced by the juror's misconduct.[3]

We disagree. When juror misconduct involves the gathering of extraneous evidence by a juror, the presumption of prejudice is not easily overcome. In disproving prejudice, jurors' statements that the misconduct did not affect their deliberations "ha[ve] 'little probative value' because of the common tendency of jurors to minimize the effect of misconduct." *Travis*, 66 S.W.3d at 5 (*citing Middleton*, 152 S.W.2d at 158). In this case, Juror Farquhar testified at the post-conviction hearing that he did not believe his investigation influenced him as a juror; but this testimony must be considered in light of the fact that it came from the only person who called the victim's home to say he "could not continue with his life" until he told the victim that he "totally believed her."

As explained in *Travis*, the State must rebut the presumption that the misconduct affected the jury's decision. The jurors' own protestations in this regard are given little weight, for reasons that are obvious.

Here, the State introduced no evidence to rebut the presumption of prejudice, and although three of the jurors testified that they were unaware of any effect from the visit, the other nine jurors did not testify. Juror Farquhar's own testimony can easily be seen as an attempt to minimize the effect of his own misconduct.

The issue of whether the victim was actually lost at the time she encountered Dorsey was important because the victim's credibility was clearly at issue. Had the victim not actually been lost, it would have undermined her credibility and supported Dorsey's version of events, which is that she stopped her car in order to buy drugs. The victim's reason for encountering Dorsey was critical to supporting her version of the events. Juror Farquhar's statement to the other jurors that he also got lost at the same location had the effect of supporting the victim's version of events, endorsing her testimony, and impeaching Dorsey's testimony.

In sum, we agree with Dorsey's post-conviction claim that there is a reasonable probability that if the juror misconduct claim had been properly investigated and presented in a timely filed motion for new trial, a new trial would have resulted.

The ineffectiveness here was based on more than failure to preserve an issue for appeal, although it is true that counsel did not preserve the issue of juror misconduct. Relying on *State v. Lay*, 896 S.W.2d 693 (Mo.App.1995), and *State v. Thompson*, 955 S.W.2d 828 (Mo.App.1997), the motion court stated: "The conviction cannot be set aside for failure to properly preserve the issue of juror misconduct for appeal. Rule 29.15 deals with prejudicial errors denying

---

**3.** The State also argues that most of the evidence presented at the PCR hearing with regard to juror misconduct would have been inadmissible at the new trial hearing on hearsay grounds. This argument is without merit. Although some segments of the evidence may have constituted inadmissible hearsay, the majority of the evidence did not.

Movant a fair trial." The State, too, contends that Dorsey's claims are nothing more than claims of ineffective assistance of trial counsel for failure to preserve issues for appellate review. The State argues that Dorsey's arguments should not be considered by this court because such claims "are not cognizable in a Rule 29.15 proceeding," citing *State v. Link*, 965 S.W.2d 906, 912 (Mo.App.1998) (failure to preserve *Batson* claim), and *State v. Brown*, 950 S.W.2d 930, 933 (Mo.App.1997) (failure to preserve claim by objecting to jury instruction). This is so, according to the State, because review of an ineffective assistance claim is limited to considering whether the alleged errors deprived the defendant of a fair *trial. See Link*, 965 S.W.2d at 912 (*citing Strickland*, 466 U.S. at 687, 104 S.Ct. 2052); *Lay*, 896 S.W.2d at 702. The State points out that Dorsey is not actually claiming that trial counsel's deficiencies affected his right to a fair trial.

Dorsey contends that the court's finding is wrong because the cases the court relies on, *Thompson* and *Lay*, were decided under the pre–1996 version of Rule 29.15 before the rule was changed to specifically provide for "claims of ineffective assistance of ... appellate counsel."[4] He reasons that because claims relating to the effectiveness of appellate counsel now must be brought in a post-conviction motion, the standard for prejudice now must also include whether there is a "reasonable probability" that but for counsel's deficient performance, the result of the *appellate process* would have been different. Dorsey's argument here, therefore, is that his *trial counsel's* deficient performance in handling the juror misconduct issue resulted in prejudice by affecting the outcome of his *appeal.*

We need not decide that precise issue. The claim of juror misconduct and Dorsey's right to seek a new trial had legal merit, whether considered by a trial judge in a post-trial motion or whether considered on appeal. We are not bound by the motion court's belief that it would not have awarded a new trial on the juror misconduct issue even if the issue had been timely and thoroughly presented. The test is not whether that particular trial judge would have granted relief. The test of merit is not whether the trial judge would have reversed his earlier ruling but rather whether, in the light of applicable law, the contention was a valid one. *Cf. Adams v. State*, 677 S.W.2d 408, 412 (Mo.App.1984).

Despite what the motion court said, we conclude, for the reasons stated above, that there is a reasonable probability that the law would have required the trial court to grant a new trial if the issue had been properly before it. Indeed, when it comes to juror misconduct issues involving extraneous evidence, reviewing courts do not always defer to the trial court's assessment as to whether a new trial should be ordered. *See, e.g., McBride v. Farley*, 154 S.W.3d 404 (Mo.App. S.D., 2004); *Stotts v. Meyer*, 822 S.W.2d 887 (Mo.App.1991). We see no reason to defer in this case, in which there is reason to believe that the juror misconduct played a role in the verdict.

We find prejudicial ineffective assistance in this case because, with a timely filed motion and a minimally appropriate presentation of law and evidence in connection with the juror misconduct issue, it is reasonably likely that Dorsey would have demonstrated to the trial court that he was entitled to a new trial.

**4.** The two cases cited by the State evidently were also decided under the older version of the rule, since both are consolidated direct and post-conviction appeals, which was no longer allowed after the 1996 amendments.

### Ineffectiveness in Urging Jury to Convict of Forcible Sodomy

 Dorsey also raises, *inter alia,* an allegation of ineffective assistance of trial counsel in arguing his case to the jury. We consider this allegation only in regard to our consideration of counsel's overall performance. In viewing the overall quality of counsel's performance, as is required under *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052, we consider whether counsel's overall performance was less than effective. *See Gardner v. State,* 96 S.W.3d 120, 132 (Mo.App.2003).

At trial, Dorsey denied having a knife or other weapon and stated that the sexual encounter was consensual, as part of the negotiations with the victim. Dorsey did admit in his testimony that, when it appeared to him that the victim was going to cease the sex act before Dorsey was ready to stop, he said that the victim "could get f———d up." Dorsey thus admitted, in essence, a threat to the victim that she had better continue participating or else he might hurt her.

At the post-conviction hearing, trial counsel testified that he made the argument he did because he believed that the trial testimony, including Dorsey's own testimony, supported a finding by the jury that Dorsey had committed forcible sodomy. Ordinarily, we would expect counsel to argue the evidence in a way favorable to the client. While perhaps a jury could reasonably convict of simple forcible sodomy on admissions similar to Dorsey's, counsel failed to explain how Dorsey's admissions should *necessarily* be viewed as an admission of the charge of forcible sodomy aggravated by displaying a dangerous instrument in a threatening manner. Because the jury instruction required a finding that defendant *displayed a dangerous instrument* to threaten the victim, in this case a concession that Dorsey was guilty of forcible sodomy was actually conceding that Dorsey wielded a weapon, something Dorsey had not admitted.

 When a defense attorney argues that his client has admitted guilt without supporting evidence, it can constitute ineffective assistance of counsel. *See, e.g., Francis v. Spraggins,* 720 F.2d 1190, 1193, 1194 (11th Cir.1983) (finding ineffective assistance where a defendant, by his testimony and his plea, sought a verdict of not guilty, but counsel, faced with strong evidence against his client, conceded the issue of guilt); *Wiley v. Sowders,* 647 F.2d 642, 649 (6th Cir.1981) (holding that counsel's argument that the defendant was "guilty as charged," made without defendant's consent, was ineffective assistance because counsel "may not stipulate to facts which amount to the 'functional equivalent' of a guilty plea").

Because there was obvious concern about the victim's credibility, it seems less than astute for counsel to concede that his client was guilty of wielding a weapon to force the sex act, when the most admitted by Dorsey was a verbal threat.

We need not decide whether the argument by itself was constitutionally ineffective in view of the fact that we have already concluded that trial counsel was constitutionally ineffective in neglecting to file Dorsey's motion for new trial in a timely manner and failing to make an appropriate presentation with regard to the juror misconduct matter. Counsel's strategy of urging the jury to convict Dorsey of forcible sodomy simply adds to the impression that trial counsel's *overall* performance was constitutionally ineffective.

We do not mean to suggest that retained trial counsel did not do some things right. After all, Dorsey was acquitted on six of the ten counts against him. Counsel did attempt to undermine the victim's credibil-

ity. For instance, counsel did point out to the jury that when the police report was initially made, the only crime mentioned was the car-jacking and the taking of the car, with no allegation of sexual assault made at that point.

■ The "benchmark" for judging whether counsel is ineffective, however, is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Deck*, 68 S.W.3d at 425 (*citing Strickland,* 466 U.S. at 686, 104 S.Ct. 2052). Because of the seriousness of the failure to pursue the juror misconduct issue so as to obtain a new trial, combined with the inappropriate concession that his client wielded a weapon at the time of the sex act, we conclude that the overall performance of counsel undermines our confidence in the verdict. Relief is appropriate. *See Gardner,* 96 S.W.3d at 132.

Even though there was a verdict of acquittal on many of the charges, we cannot say that there was not a reasonable likelihood of even more acquittals, at least as to charges requiring belief in the use of a weapon. Because we know so little about the dynamics of the jury deliberations and the true effect of the juror misconduct in this case, we have very little basis to say that, had counsel secured a new trial, Dorsey would have done no better in a second trial. Thus, we feel constrained to say that defense counsel's errors and overall performance were such that we cannot be confident in the trial having achieved a just result. *See Id.* at 133. Because we have a definite and firm impression that a mistake was made in ruling on the post-conviction motion, we reverse the motion court's decision.

## Conclusion

Based on the foregoing, the judgment denying the post-conviction motion is re-versed. The cause is remanded to the motion court to vacate the convictions and the sentences and to order a new trial.

ELLIS and HARDWICK, JJ., concur.