2007 WY 26

**Jorge MENDOZA, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 05–222.**

Supreme Court of Wyoming.

Feb. 13, 2007.

Representing Appellant: Kenneth M. Koski, State Public Defender; and Donna D. Domonkos, Appellate Counsel.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Leda M. Pojman, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Appellant, Jorge Mendoza (Mendoza), contends that the evidence presented at his trial is not sufficient to sustain his convic-

---

1. § 6–2–502. Aggravated assault and battery; penalty
   (a) **A person is guilty of aggravated assault and battery if he:**
   (i) Causes serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
   (ii) **Attempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon;**

---

tion for the crime of aggravated assault and battery in violation of Wyo. Stat. Ann. § 6–2–502(a)(ii) (LexisNexis 2005).[1] We will affirm.

### ISSUE

[¶ 2] Mendoza posits this issue:

Sufficient evidence does not exist to support [the] conviction.

The State responds that there is sufficient evidence for the jury to have found that Mendoza knowingly stabbed Troy Garcia (Garcia).

### STANDARD OF REVIEW

[¶ 3] In addressing a claim of insufficiency of the evidence, we must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. When considering a claim of the sufficiency of the evidence, we review that evidence with the assumption that the evidence of the prevailing party is true, disregard the evidence favoring the unsuccessful party, and give the prevailing party the benefit of every favorable inference that we may reasonably draw from the evidence. We will not reweigh the evidence nor will we re-examine the credibility of the witnesses. *Perritt v. State*, 2005 WY 121, ¶ 9, 120 P.3d 181, 186 (Wyo.2005).

### FACTS AND DISCUSSION

[¶ 4] The elements of the crime at issue were presented to the jury in Instruction No. 5:

The elements of the crime of Aggravated Assault and Battery, as charged in this case, are:

1. On or about the 24th day of April, 2004

---

(iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another; or
(iv) Intentionally, knowingly or recklessly causes bodily injury to a woman whom he knows is pregnant.
(b) Aggravated assault and battery is a felony punishable by imprisonment for not more than ten (10) years. [Emphases added.]

2. In the County of Carbon, and State of Wyoming

3. The Defendant, Jorge Mendoza

4. Knowingly caused

5. Bodily injury to Troy Garcia

6. With a deadly weapon.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the Defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty.

[¶ 5] "Knowingly" was defined in Instruction No. 6:

An act is done knowingly if the defendant is aware of the act and does not **act through ignorance, mistake or accident.** The State is not required to prove that the defendant knew that his acts or omissions were unlawful. You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly. [Emphasis added.]

[¶ 6] On April 24, 2004, Mendoza was involved in a fight at Mike's Big City Bar in Rawlins. Mendoza was 19 years old. He had been denied entrance to that bar because he was underage but, after entering through a back door, he was kicked out of the bar just before the fight at issue broke out. Some evidence suggests Mendoza may have started the fight, but that is not an especially pertinent part of the story. Mendoza was born in Rawlins and at various times lived there, in Las Vegas, Nevada; Greeley, Colorado; and Riverton.

[¶ 7] The crux of Mendoza's argument is that the stabbing occurred accidentally during a bar brawl and there is no evidence from which the jury could conclude that he acted "knowingly." In this regard, in addition to the "knowingly" instruction recited above, we take note that a series of five self defense

instructions were provided to the jury that made it clear that the State had to prove that Mendoza did not act in "self defense." Moreover, Mendoza contends that a finding of guilt relies upon an "inference upon an inference:"

Mr. Mendoza argues that the record establishes that the only way the jury could have convicted him was by placing impermissible inference upon impermissible inference. The impermissible inference being that Mr. Mendoza knowingly caused bodily injury based on Mr. Garcia, who was wearing a white shirt, having an injury and Mr. Mendoza admitting having the knife and possibly coming into contact with someone who was wearing a white shirt who fell against him. There is no logical way to reach that conclusion without drawing an impermissible inference upon an impermissible inference.

■ [¶ 8] The essence of the rule relied upon by Mendoza is the requirement that there must be some connection between the proven fact and the inference drawn from it. See *Mora v. State*, 984 P.2d 477, 481 (Wyo. 1999).[2]

[¶ 9] Against this background, we set out the facts that the jury could have relied upon in reaching its verdict. Unlike the recitation of the facts provided by Mendoza, we recite only those facts that we permit ourselves to consider under the applicable standard of review. Rawlins Police Detective Michael Picerno, as well as other police officers, testified that they were called to Mike's Big City Bar at 1:05 a.m. on April 24, 2004. Early on in the investigation, Detective Picerno talked with Mendoza. Mendoza told Picerno that he had been removed from the bar by the owner for being underage, and was removed for a second time after he entered the bar through a back door. At that time, the owner of the bar also asked Mendoza's family members to leave (because they had let him in through a back door). Very shortly after that, Mendoza and several members of his family, along with a half dozen or so other bar patrons, got involved in a fight. Mendo-

---

2. Mendoza also calls our attention to the case *Eagan v. State*, 58 Wyo. 167, 128 P.2d 215 (Wyo. 1942). The principle articulated in that case has no application in the instant circumstances. See, e.g., *Butcher v. State*, 2005 WY 146, ¶¶ 25–27, 123 P.3d 543, 551 (Wyo.2005).

za was afraid, so he took out his knife and prepared himself to use it. Mendoza denied actually using the knife but told Picerno that one of the persons involved in the fight fell on him and may have come into contact with the knife. Mendoza only described that person as "wearing a white shirt." Mendoza's knife was found at the scene and it had blood on it. Mendoza admitted that the knife found at the scene was his. No other knife was recovered at the scene of the fight nor were any other knives seen by any of the others involved in the fight or those who witnessed the fight.

[¶ 10] Troy Garcia was one of the people involved in the fight. He was wearing a white undershirt and white polo shirt. He was in the same area of the fight as Mendoza. He suffered a puncture wound to the abdomen. All persons at the scene were checked for wounds and only Garcia had suffered such a wound. He was the only person in Rawlins who was treated at the Rawlins hospital for a puncture wound during that time period.

[¶ 11] Louis Mendoza, Jr., brother to Jorge Mendoza, the Appellant in this case, was questioned at the scene by Police Officer Castilleja. Castilleja related that Louis, Jr., stated "that if his brother had stabbed anybody, that he would take the heat for it." Officer Castilleja also testified that the victim, Troy Garcia, accused Cain Cabello of stabbing him. Later, when Garcia was at the hospital, Cain showed up there, protesting that he had not stabbed Garcia. The bouncer from the bar testified about the fight in general and, in particular, that Cain Cabello did not appear to be involved in it. This testimony was also corroborated by Nicole Zink. The bouncer also testified that he tried to protect a person who was taking the brunt of the fight, and that person was Troy Garcia.

[¶ 12] Troy Garcia testified that before and during the fight he was drunk and angry. It was only after the fight had subsided that Garcia realized he had been stabbed. He did not know when it happened or who might have done it. He vaguely remembered falling down to the ground with some other people, although he was not sure who,

and that his stab wound could have occurred then. Garcia did not remember seeing Mendoza at all that night. Garcia was transported to the Rawlins hospital where he was treated for his stab wound.

[¶ 13] Kandi Cisneros testified that it was Mendoza who threw the first punch, starting the big fight/melee that followed. He hit Nicole Zink and soon all three, Mendoza, Cisneros, and Zink, were on the ground fighting. Garcia was in the same group as Cisneros and Zink. However, Cisneros did not actually see Garcia fighting with Mendoza. The only person she saw Garcia fighting with was Cain Cabello.

[¶ 14] David Cesko, M.D., Garcia's treating physician, testified that he had considerable experience treating stab wounds and that the wound suffered by Garcia was an in-and-out stab wound. The stab wound suffered by Garcia took considerable force so as to penetrate clothing, skin, fat, muscle, the abdominal cavity, and leave bruising at the wound site. However, he continued on cross examination, it was possible that the wound could have resulted from Garcia falling onto the knife. The wound was consistent with the knife found at the scene and which belonged to Mendoza.

[¶ 15] Linda Oderhsatter, a forensic scientist at the State Crime Laboratory, testified that the tear in Garcia's shirt was from a cut/stab action and not tearing.

[¶ 16] A portion of a letter written by Mendoza and copied by personnel at the Carbon County Jail was read for the jury:

Okay. This [is] what happened after I got kicked out. My dad and Louie came out maybe five minutes after that. Three guys and, like, two or three girls came outside after Louie and my dad. And some guy in red said to Louie, you got a problem? And that's when I got hella hot. My dad didn't want to—want me to go. He was holding me back, and I was, like, let me go, let me go. After two minutes, maybe, he did. The fight did not happen right away. Louie said he didn't have a problem, because this is Rawlins, the cops will be here quick. And the next thing I know the guys hit Louie and Louie swang

back and then two guys started swinging at me. I hit both of them but didn't do shit because when I was socking one, another one hit me and plus they are a lot bigger than me and Louie put together. And after that happened, one got off me and started hitting Louie. I was scared hella scared and I pulled my knife out. I was going to use it in self-defense. I didn't have anything on my [mind] about killing anybody. I pulled it out—about. I had no choice. Nobody seen the knife in my hand, because it was on the side of my hip. And after I pulled it out, I was, like, I don't want to use this, but like I said, I didn't have any other choice anyways. I was going to put it away and that's when I got socked by one or both of the guys and I was dazed. And then someone fell on me, someone in a white shirt, I'm guessing the guy that went to the hospital. My dad was just trying to break it up, because if he hit someone, he would of [sic] put someone in the hospital. One of the girls said that he hit her but that's bullshit, because I seen my dad fight. He would of [sic] put that girl in a coma or worse.

[¶ 17] Finally, evidence was presented that Louis Mendoza, Jr., apparently picked up the knife that his brother had pulled out during the fight and concealed that knife, along with his shirt, under the tire of a nearby car.

[¶ 18] We conclude that the evidence was sufficient to convict Mendoza, and furthermore that that conclusion does not rely on improper inferences. Mendoza admitted that he pulled out his knife with the intent to use it in the fight, if necessary. His was the only knife identified at the scene and an effort was made to conceal it from discovery, albeit by Mendoza's brother. Mendoza stated to police that he thought a person in a white shirt might have "come in contact" with his knife. The only person wearing a white shirt that night was Garcia and he was, in fact, stabbed. The stab wound was consistent with an in-and-out stabbing, but not an accidental cut. Moreover, we conclude that had Garcia actually fallen on the knife, the jury would not have been required to view that as an "accident." Rather, it could have

been viewed as a foreseeable result of pulling out a dangerous weapon such as a knife under circumstances like those that presented themselves during the early morning hours of April 24, 2004.

## CONCLUSION

[¶ 19] After a careful examination of the evidence in the light most favorable to the State's position, we conclude that the evidence was sufficient for the jury to conclude that Mendoza was guilty of aggravated assault and battery. It was not necessary for the jury to rely upon improper inferences in reaching that conclusion. The judgment and sentence of the district court is affirmed in all respects.