2008 WY 33

**Michael PATTERSON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–07–0005.**

Supreme Court of Wyoming.

March 27, 2008.

Representing Appellant: Diane M. Lozano, Wyoming State Public Defender; Tina N. Kerin, Appellate Counsel; Ryan R. Roden, Assistant Appellate Counsel; Diane E. Courselle, Director, and William Elliott, Student Intern, of the Defender Aide Program. Argument by Mr. Elliott.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Leda M. Pojman, Assistant Attorney General. Argument by Ms. Pojman.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Michael Patterson appeals his conviction of being an accessory before the fact to second degree murder.[1] He claims the evidence was insufficient to support a conviction for being an accessory and that the jury was improperly instructed on the elements of second degree murder. Finding Patterson's arguments to be without merit, we affirm.

## ISSUES

[¶ 2] Patterson presents two issues for review by this Court:

1. Wyo. Stat. Ann. § 6–1–201. Accessory before the fact.

   (a) A person who knowingly aids or abets in the commission of a felony, or who counsels, encourages, hires, commands or procures a felony to be committed, is an accessory before the fact.

   Wyo. Stat. Ann. § 6–2–104. Murder in the second degree; penalty.

   Whoever purposely and maliciously, but without premeditation, kills any human being is guilty of murder in the second degree, and shall be imprisoned in the penitentiary for any term not less than twenty (20) years, or during life.

I. Was the evidence convicting Mr. Patterson of accessory before the fact to second-degree murder insufficient because the State failed to establish that Mr. Patterson knowingly aided or abetted another person in the commission of the crime of second degree murder as there was no evidence that Mr. Patterson contributed to, shared in the intent to commit, or encouraged the acts of the unidentified principle which caused Mr. Blankenship's death?

II. Was the jury incorrectly instructed as to the elements of second-degree murder, specifically since the court provided instructions defining "purposely" and "maliciously" that left doubt as to under what circumstances second-degree murder could be found to have been committed and what circumstances amounted to the lesser-included offense of voluntary manslaughter?

## FACTS[2]

[¶ 3] This case stems from a street brawl that resulted in the death of James Blankenship. On September 17 and the early morning hours of September 18, 2005, Patterson had been out partying with Ronterral Clark, among others. Eventually, he and some other friends ended up at Ronterral's house. Ronterral's brother, Urich Clark, had an ongoing feud with a man named Kelly Burroughs. Urich and Burroughs had set up a confrontation at a local convenience store. Ronterral found out about the impending fight and decided to go help his brother out. Patterson and his friends decided to go along, also to back up Urich if needed.

[¶ 4] As it happened, numerous men from both Burroughs' side and Urich's side

2. As per our usual protocol on review, the evidence favoring the State is accepted as true and the evidence in conflict therewith is entirely left out of consideration. The State is given the benefit of those inferences which may be fairly and reasonably drawn from the evidence. *Kelly v. State*, 2007 WY 45, ¶ 11, 153 P.3d 926, 929 (Wyo.2007); *Mendoza v. State*, 2007 WY 26, ¶ 3, 151 P.3d 1112, 1113 (Wyo.2007); *Jones v. State*, 2006 WY 40, ¶ 11, 132 P.3d 162, 165 (Wyo.2006).

showed up at the convenience store. Blankenship was one of the men on Burroughs' side. Once both Burroughs and Urich arrived at the convenience store, a free-for-all brawl amongst all the men erupted. At some point in the brawl, Patterson was seen choking Blankenship as Blankenship lay on the ground. Patterson was yelling at Blankenship that he was going to kill him. Ronterral testified he pulled Patterson off Blankenship and told Patterson that they should "stomp" Blankenship. Even before Ronterral had completed pulling Patterson off Blankenship, a third, unidentified, man began repeatedly "stomping" Blankenship in the head. Patterson and Ronterral joined him and simultaneously kicked Blankenship in the torso. Blankenship was lying on the ground through the entire attack and did not fight back in any way.

[¶ 5] Blankenship was lying unconscious on the ground when one of Burroughs' men saw Patterson, Ronterral and the third, unidentified, man "stomping" on Blankenship. He ran over, pushed one of the men away from Blankenship, and threw himself over Blankenship's body. The fight seems to have broken up shortly thereafter and everyone scattered. The convenience store clerk called the police and when the police arrived they found Blankenship lying unconscious on the ground. Blankenship ultimately died of head injuries.

[¶ 6] The coroner testified at trial that Blankenship was approximately six feet tall and 137 pounds. The only life threatening injuries suffered by Blankenship were to his head. The coroner reported markings on the side of Blankenship's face consistent with shoe prints. The other side of Blankenship's head had non-specific abrasions and diffused bruising, i.e., road rash type injuries. The coroner testified that, based on the observable head injuries, Blankenship was kicked and stomped at least five to ten times in the head. The coroner opined that the cause of Blankenship's death was "probably a combination of kicks and stomps to the left side of the head with the right side being down on a relatively firm surface."

[¶ 7] Patterson was eventually tracked down and charged with being an accessory before the fact in the "stomping" death of Blankenship. Patterson was convicted after a jury trial.

## DISCUSSION

[¶ 8] In order to convict Patterson of being an accessory before the fact to second degree murder, the State first had to prove beyond a reasonable doubt that a second degree murder had been committed (albeit by an unknown assailant). *See generally Black v. State*, 2002 WY 72, ¶ 53, 46 P.3d 298, 308 (Wyo.2002); *Fales v. State*, 908 P.2d 404, 408 (Wyo.1995). Consequently, we will discuss Patterson's second issue first. In his second issue, Patterson challenges the jury instructions on the ground that they did not clearly distinguish between the elements of second degree murder and the lesser-included offense of voluntary manslaughter.

[¶ 9] Patterson did not object to any of the jury instructions before they were given to the jury. Any objections are thus deemed waived pursuant to W.R.Cr.P. 30.[3] Patterson requests, however, this Court exercise its discretion to review his claim of allegedly improper jury instructions for plain error. W.R.Cr.P. 52(b), W.R.A.P. 9.05. Under the facts and circumstances of this appeal, we decline to do so.

[¶ 10] Failure to instruct properly on an element of a crime does not constitute plain error where evidence of the defendant's guilt is overwhelming. *Iseli v. State*, 2007 WY 102, ¶ 9, 160 P.3d 1133, 1136 (Wyo.2007); *Siler v. State*, 2005 WY 73, ¶ 44, 115 P.3d 14, 36 (Wyo.2005); *Lapp v. State*, 2004 WY 142, ¶ 10, 100 P.3d 862, 865 (Wyo.2004); *Wilson v. State*, 14 P.3d 912, 916 (Wyo.2000). Second degree murder is defined by Wyo. Stat. Ann. § 6–2–104 (LexisNexis 2007): "[w]hoever purposely and maliciously, but without premeditation, kills any human being is guilty of murder in the second degree." The most

3. W.R.Cr.P. 30, in pertinent part, reads:
No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury is instructed, stating distinctly the matter to which the party objects and the grounds of objection.

pertinent focal point of Patterson's argument on appeal is the definition of "maliciously." The jury was instructed that " '[m]aliciously' means the state of mind in which an intentional act is done without legal justification or excuse. The term 'maliciously' conveys the meaning of hatred, ill will, or hostility toward another." Patterson argues this Court should redefine "maliciously" to require an act that is likely to be attended with dangerous or fatal consequences. Given the facts of this case, the requested modification is immaterial.

[¶ 11] The State presented overwhelming evidence of malice no matter which definition is used. Multiple men drove to the convenience store knowing a fight would take place. An unidentified assailant repeatedly and consistently stomped Blankenship's head as the slightly built Blankenship was lying on the ground and of no threat to anyone. The stomping continued even after Blankenship was rendered unconscious. These facts unmistakably support a finding that the stomping of Blankenship's head was done maliciously even under Patterson's proposed definition. We therefore need not engage in the exercise of reviewing further for plain error.

### Sufficiency of the evidence

[¶ 12] Patterson does not dispute the facts per se. Instead, he claims that his actions the night of Blankenship's death do not equate to aiding and abetting second degree murder. He argues he was "only" kicking Blankenship in the torso. His argument continues that since Blankenship died of head injuries, and he never kicked Blankenship in the head, he "never participated in the acts that resulted in the accomplishment or success of the criminal venture—specifically, he did not participate in the acts which led to the injuries causing Mr. Blankenship's death."

[¶ 13] Unsurprisingly, we disagree. Accomplice liability is inherently derivative because the accomplice does not directly perform the acts constituting the substantive crime. An accessory before the fact is someone who "knowingly aids or abets in the commission of a felony, or who

counsels, encourages, hires, commands or procures a felony to be committed." Wyo. Stat. Ann. § 6–1–201(a) (LexisNexis 2007). In this case, Patterson was specifically charged with "aiding and abetting." Certainly, merely being a neutral presence at a crime scene does not constitute aiding and abetting. Rather, as the jury properly was instructed, "[t]he State must prove that the defendant knowingly associated himself with the crime in some way as a participant— someone who wanted the crime to be committed—and not as a mere spectator." As we have explained:

> To convict a person of aiding and abetting, it must be proved that the crime was committed by someone and that the aider and abettor associated himself with and participated in the accomplishment and success of the criminal venture. *Fales v. State,* 908 P.2d 404, 408 (Wyo.1995); *Jones v. State,* 902 P.2d 686, 693 (Wyo.1995). We also held in *Edge v. State,* 647 P.2d 557, 560 (Wyo.1982), that it is not necessary to prove that each defendant did that which was necessary to establish each element of an offense but that it is sufficient to show that they were associated together in doing that which comprises each element of the offense. Further, although a defendant's presence at the time and place of the crime does not establish guilt as an aider, abettor, or principal, an intent to engage in the criminal venture may be shown by the relationship of the parties and by their conduct before and after the offense. *Haight v. State,* 654 P.2d 1232, 1238 (Wyo. 1982).

*Black,* ¶ 10, 46 P.3d at 301.

[¶ 14] Far from being a disinterested observer, Patterson irrefutably "associated himself with and participated in the accomplishment and success of the criminal venture." The first information we have of Patterson's altercation with Blankenship is Patterson declaring his intent to murder Blankenship as he was choking him. Patterson was not able to complete the job because Ronterral Clark pulled him off Blankenship. Ronterral suggested they "stomp" Blankenship instead. Patterson quickly adopted the new method of injuring

Blankenship. Immediately upon Ronterral's suggestion, Patterson, Ronterral and a third, unidentified, man began stomping Blankenship. The unidentified man was repeatedly stomping Blankenship's head. Patterson did not attempt to stop the unidentified man, nor did Patterson even walk away. Instead, knowing what the principal was doing, Patterson continued to stomp Blankenship.

[¶ 15] Patterson's actions conclusively associated him with the unidentified man maliciously, purposely, stomping on Blankenship's head. In particular, Patterson aided and abetted the unidentified man stomping Blankenship's head by initiating the violent attack as Blankenship was lying on the ground and then helping prevent Blankenship from rising or otherwise defending himself. We are satisfied the evidence supports, beyond a reasonable doubt, the jury's finding that Patterson intentionally aided and abetted the culpable conduct resulting in the second degree murder of Blankenship.

## CONCLUSION

[¶ 16] The evidence adduced at trial overwhelming supports a finding that Patterson aided and abetted in the culpable conduct that resulted in the second degree murder of James Blankenship. Patterson effectively disabled Blankenship, kicked Blankenship as Blankenship lay on the ground and continued to kick Blankenship as someone else "stomped" multiple times on Blankenship's head. Given the viciousness of the attack, Blankenship's death was a virtual certainty. No alteration in the jury instructions as proposed by Patterson would change the outcome of this case. Patterson's Judgment and Sentence is affirmed.