2011 WY 167

**Varo KEN, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. S–10–0103.**

Supreme Court of Wyoming.

Dec. 22, 2011.

Representing Appellant: Patricia L. Bennett, Cheyenne, Wyoming.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Leda M. Pojman, Senior Assistant Attorney General. Argument by Mr. Armitage.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1]  A jury convicted Varo Ken of attempted first degree murder and aggravated assault.  He appealed, asserting defense counsel provided ineffective assistance in several ways, including that he failed to file a timely motion for new trial.  Mr. Ken also contended the evidence presented to the jury was insufficient to support his conviction for attempted first degree murder.[1]

[¶ 2]  After docketing Mr. Ken's appeal, we remanded the case to the district court for an evidentiary hearing on his claim that counsel was ineffective.  On remand, the parties stipulated that defense counsel failed to timely file post-trial motions for acquittal and new trial.  Following a hearing, the district court concluded Mr. Ken was prejudiced by counsel's failure to timely file a motion for new trial because, had counsel timely filed the motion, the court would have granted it on the ground that the attempted first degree murder conviction was contrary to the weight of the evidence and may have resulted in a miscarriage of justice.

[¶ 3]  Upon the district court's entry of its findings of fact and conclusions of law, the case returned to this Court for consideration of the issues Mr. Ken presented in his appeal.  Addressing his second issue first, we hold that sufficient evidence was presented to support the attempted first degree murder conviction;  therefore, Mr. Ken was not entitled to a judgment of acquittal.  Our holding on that issue leaves only the claim of ineffective assistance of counsel remaining.  We hold that Mr. Ken has satisfied his burden to show ineffective assistance of counsel.  Therefore, we reverse the attempted first degree murder conviction and remand the case for a new trial on that charge.

### ISSUES

[¶ 4]  Mr. Ken states the issues for this Court's determination as follows:

I.  Whether the ineffective performance of trial counsel denied Ken his Sixth Amendment right to effective counsel.

II.  Whether evidence presented at trial was sufficient to support convictions of attempted first degree murder and aggravated assault.

The State rephrases the same issues.

### FACTS

[¶ 5]  On August 7, 2009, the Uinta County prosecutor filed an information charging

---

1.  In his issue statement, Mr. Ken also challenges the sufficiency of the evidence to support the aggravated assault conviction.  However, he presents no argument as to that charge and fo-

cuses instead exclusively on the attempted first degree murder conviction.  We, therefore, do not address the sufficiency of the evidence of aggravated assault.

Mr. Ken with attempted first degree murder in violation of Wyo. Stat. Ann. § 6-1-301(a) (LexisNexis 2011) and § 6-2-101(a) and (b) (LexisNexis 2011) and aggravated assault in violation of Wyo. Stat. Ann. § 6-2-502(a)(iii) and (b) (LexisNexis 2011). In the accompanying affidavit, Evanston police officer Douglas Matthews stated that on the evening of July 26, 2008, Rachel Garcia called 911 to report that a man had fired a gun at her, her five year old son and her fiancé, Lance Menard, in the parking lot of an apartment complex in Evanston, Wyoming.[2] She provided dispatch with a description and the license plate number of the vehicle the suspect was driving when he left the scene. The vehicle was licensed in the state of Utah and dispatch notified authorities there to locate and stop it.

[¶ 6] Meanwhile, Officer Matthews spoke with Ms. Garcia and Mr. Menard. According to his affidavit, they reported that they had pulled into a parking space next to the suspect's vehicle. Words were exchanged and Mr. Menard made a derogatory comment to the suspect. As he, Ms. Garcia and the child approached the entrance to the apartment complex, Mr. Menard heard the suspect yelling. He turned and saw the suspect pointing a gun at him. According to Officer Matthews, Mr. Menard and Ms. Garcia reported that the suspect fired four shots at them, got into his vehicle and drove away.

[¶ 7] Approximately forty minutes later, a Utah State Trooper stopped a vehicle matching the description Ms. Garcia had provided and took the two occupants into custody. The driver was identified as Mr. Ken, the passenger as Anisa Chandavong. The trooper searched the vehicle and found a semi-automatic handgun.

[¶ 8] Officer Matthews interviewed Ms. Chandavong the following day. According to his affidavit, Ms. Chandavong told him that she and Mr. Ken were seated in the car in the parking lot when a truck pulled into the parking space next to them and some people got out. Ms. Chandavong said Mr. Ken got out of the car because he thought the man

was yelling at him. She said she did not hear what was said or gunshots because she was wearing earphones. She also said she did not see a gun until Mr. Ken got back in the car.

[¶ 9] Officer Matthews also interviewed Mr. Ken. According to the officer's affidavit, Mr. Ken said he and his girlfriend were arguing in his vehicle in the parking lot when a pickup pulled into the space next to them and several people got out. He heard the man yell something and thought he was yelling at him. He got out of the car, the man yelled something derogatory, and Mr. Ken got his gun. He said that he fired a shot in the air and then walked toward the man. According to the affidavit, Mr. Ken told Officer Matthews that he pointed the gun directly at the man, heard Ms. Garcia scream that her child was in the line of fire, pointed the gun off to the right and fired again. Mr. Ken said he then pointed the gun back at Mr. Menard and fired. Later, Officer Matthews found two spent shell casings, one in front and the other behind where Mr. Ken's vehicle had been parked. He also found a bullet hole in the screen door of the main floor apartment to the right of the building entrance and another bullet hole in the face plate of the apartment deck above the main floor apartment. No other bullets or casings were found.

[¶ 10] The district court convened a jury trial on the charges against Mr. Ken. On the second day of trial, defense counsel informed the district court that the prosecutor had that morning provided a report indicating Mr. Menard had pleaded guilty to battery in 2008 after an incident in which he was reported to have picked a fight in a bar with another customer. At the point when defense counsel received the report, Mr. Menard had already testified. Defense counsel argued that Mr. Menard's prior involvement as the aggressor in an argument was relevant to Mr. Ken's self-defense claim and asked for the opportunity to call him back to the witness stand and question him about the incident. The district court indicated there

---

**2.** Although not mentioned in the affidavit, Ms. Garcia's eighteen-year-old brother, Daniel Lopez, was also present.

should be a hearing or an offer of proof. The trial continued.

[¶ 11] At the close of the State's evidence, defense counsel moved for a judgment of acquittal on the attempted first degree murder charge, arguing there was insufficient evidence. The district court denied the motion, concluding the evidence that Mr. Ken retrieved a firearm, pointed it at Mr. Menard and fired, when viewed in the light most favorable to the State, created a reasonable inference that he intended to kill Mr. Menard. Defense counsel then made an offer of proof concerning the newly disclosed report. The district court reserved ruling on whether it would allow the defense to re-call Mr. Menard.

[¶ 12] The defense presented its case through the testimony of Ms. Chandavong. After her testimony, the defense rested. The court excused the jury and asked defense counsel if he had intended to rest without a ruling on whether he would be allowed to re-call Mr. Menard. Defense counsel responded that he had intended to rest because it was too late to investigate the incident which had led to the battery charge against Mr. Menard. The court advised the parties that it would allow the defense to re-call Mr. Menard. Counsel reiterated that the defense rested.

[¶ 13] On February 4, 2010, the jury returned a verdict of guilty on both counts. The district court discharged the jury and immediately sentenced Mr. Ken to life imprisonment without the possibility of parole on the attempted first degree murder conviction and a concurrent term of two to six years for the aggravated assault conviction. The district court entered a written judgment and sentence on February 23, 2010.

[¶ 14] On March 3, 2010, twenty-seven days after the jury rendered its verdict and Mr. Ken was sentenced, defense counsel filed a motion for judgment of acquittal and a new trial. The district court denied the motion, finding that it was not filed in accordance with W.R.Cr.P. 29(c), which requires motions for judgment of acquittal to be filed within ten days after a verdict is returned, or W.R.Cr.P. 33(b) requiring motions for new trial to be filed within fifteen days after a verdict. Mr. Ken then appealed his conviction and the order denying his post-trial motions.

[¶ 15] After the appeal was docketed in this Court, Mr. Ken filed a motion for an order partially remanding the case to district court for a hearing pursuant to W.R.A.P. 21 on his claim that defense counsel performed ineffectively.[3] Mr. Ken claimed counsel was ineffective in that he failed to request a continuance after learning of Mr. Menard's prior history of provoking confrontation and arrest for battery; failed to adequately investigate Mr. Menard's history; rested his case before the district court ruled on whether he would be allowed to re-call Mr. Menard; and failed to file timely post-trial motions for acquittal and new trial. We granted the motion and ordered a remand.

[¶ 16] The district court convened a hearing and subsequently issued findings of fact and conclusions of law in which it concluded

---

3. W.R.A.P. 21 allows a defendant after his appeal is docketed in this Court to request a remand to the district court for an evidentiary hearing on a claim of ineffective assistance of counsel. Subparagraph (d) of Rule 21 provides that "Deadlines for filing of briefs shall be stayed upon the filing of a motion to remand under this rule until further order of the appellate court." Rule 21 thereafter provides in relevant part:

(e) Upon remand the trial court shall promptly conduct hearings and take evidence as necessary to enter its findings of fact and conclusions of law on the claim of ineffective assistance of counsel. * * * The trial court shall enter written findings of fact and conclusions of law concerning the claimed deficient performance by counsel and the claimed prejudice suffered by appellant as a result, in accordance with the order of remand. Errors claimed to have been made during the trial court proceedings conducted pursuant to this rule are reviewable under the same standards as the review of errors in other appeals.

(f) At the conclusion of all proceedings before the trial court, the clerk of the trial court and the court reporter shall immediately prepare and file the record of supplemental proceedings as required by these rules. The clerk of the trial court shall notify the clerk of the appellate court when the record of these proceedings is complete and provide a copy of the order on remand.

(g) Upon receipt of the notification from the trial court that the record of the proceedings is complete, the clerk of the appellate court shall notify the parties of the new briefing schedule.

defense counsel was not ineffective in failing to request a continuance, adequately investigate, or wait for the district court's ruling on re-calling Mr. Menard before resting. Pursuant to the parties' stipulation, the district court found defense counsel failed to timely file motions for acquittal and new trial. The district court concluded counsel's performance was deficient because he failed to timely file the motions. The district court concluded Mr. Ken was not prejudiced by the failure to timely file a motion for acquittal; however, it concluded he was prejudiced by the failure to timely file a motion for new trial because, had the motion been timely filed, he would have granted a new trial on the attempted first degree murder charge. The district court entered its findings and conclusions, and this Court resumed jurisdiction of the matter.

## DISCUSSION

### 1. Sufficiency of the Evidence

■ [¶ 17] The Double Jeopardy Clause precludes a second trial once a reviewing court has found the evidence presented in the first trial legally insufficient to support the conviction. *Tanner v. State,* 2002 WY 170, ¶ 17, 57 P.3d 1242, 1247 (Wyo.2002); *Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978). The only "just" remedy available upon such a finding is an order directing entry of a judgment of acquittal. *Id.* Thus, a finding that the State presented insufficient evidence to support the jury's guilty verdict on the attempted first degree murder charge would fully resolve this case and we begin by considering that issue.

■ [¶ 18] The statutes under which Mr. Ken was charged provide in pertinent part as follows:

§ **6–2–101. Murder in the first degree;**
. . . .

(a) Whoever purposely and with premeditated malice . . . kills any human being is guilty of murder in the first degree.

§ **6–1–301. Attempt;** . . . .

(a) A person is guilty of an attempt to commit a crime if:

(i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime[.]

Therefore, in order to prove Mr. Ken attempted to commit first degree murder, the State had to prove he intended to kill Mr. Menard and took action strongly corroborative of the firmness of that intent. The State also had to prove Mr. Ken did so purposely and with premeditated malice.

■ [¶ 19] The following standards govern our review of a sufficiency of the evidence claim:

[W]e examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt.

*Daves v. State,* 2011 WY 47, ¶ 30, 249 P.3d 250, 259 (Wyo.2011).

■ [¶ 20] The State presented the testimony of three witnesses, Ms. Garcia, Mr. Menard and Mr. Lopez, that as they were walking away from Mr. Ken toward the apartment complex, he got the gun from his car, pointed it directly at them and began walking toward them. They also testified that he pointed the gun at Mr. Menard and fired. Mr. Menard testified unequivocally that Mr. Ken pointed the gun directly at him and fired twice while still pointing the gun at him.

[¶ 21] Mr. Ken admitted in the recorded interview that he was angry when he fired the gun. Although the trial testimony varied as to exactly what Mr. Menard said to provoke Mr. Ken, Mr. Menard, Ms. Garcia and Mr. Lopez all testified that his comment was racial and derogatory. Mr. Ken admitted that he aimed the gun at Mr. Menard. Although the only bullet holes found were off to the right of where the testimony indicated

Mr. Menard was standing, Officer Matthews testified based on his experience and training that a person's state of mind can affect his accuracy with a handgun. He testified that any time a person is upset or excited his adrenaline flows and affects fine motor skills such as sight and accuracy with a handgun.

[¶ 22] Accepting this evidence as true, and refraining from substituting our judgment for that of the jury, we conclude the jury reasonably could have concluded that Mr. Ken was angry, retrieved the gun and purposely aimed it at Mr. Menard. The jury also could reasonably have concluded that Mr. Ken fired the gun at Mr. Menard twice with the intent of killing him but, in the excitement of the moment, missed his target and hit the apartments off to the right of Mr. Menard.

[¶ 23] Arguing otherwise, Mr. Ken focuses on the words "purposely" and "premeditated malice" in the first degree murder statute. Relying on the three-part test this Court adopted in *Mattern v. State*, 2007 WY 24, ¶ 30, 151 P.3d 1116, 1129 (Wyo.2007) for evaluating on appeal whether sufficient evidence was presented to sustain an attempted first degree murder conviction, Mr. Ken asserts his conviction must be overturned because there was insufficient evidence that he acted purposely or with premeditated malice. The test we reiterated in *Mattern* is as follows:

> Evidence sufficient to sustain a finding of premeditation and deliberation "falls into three basic categories: (1) facts about * * * what defendant did *prior* to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing—what may be characterized as 'planning' activity; (2) facts about the defendant's *prior* relationship and/or conduct with the victim from which the jury could reasonably infer a 'motive' to kill the victim, which inference of motive, together with facts of type (1) or (3) would * * * support an inference that the killing was the result of 'a pre-existing reflection' and 'careful thought and weighing of considerations' rather than 'mere unconsidered or rash impulse hastily executed'; (3) facts

about the nature of the killing from which the jury could infer that the *manner* of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take [the] victim's life in a particular way for a 'reason' which the jury can reasonably infer from facts of type (1) or (2)."

*Id.*, quoting *People v. Crandell*, 46 Cal.3d 833, 760 P.2d 423, 441, 251 Cal.Rptr. 227 (1988) (emphasis in original).

[¶ 24] Mr. Ken asserts the evidence presented in his case failed to show any of the three categories of evidence described in *Mattern*. He contends there was no evidence that he engaged in planning activity, no evidence that he had a prior relationship with Mr. Menard from which a motive to kill could be inferred, no evidence from which it could be inferred he attempted to kill Mr. Menard after careful thought or weighing the considerations and no evidence of a preconceived design to attempt to take Mr. Menard's life in a particular way for a particular reason.

[¶ 25] We said in *Mattern*, ¶ 30, 151 P.3d at 1129–30, that premeditation need not have existed for any given length of time before the act. It is sufficient that it existed at the time of the act. *Id.* The intent and act may be as instantaneous as successive thoughts. *Id.* The evidence that Mr. Ken responded to Mr. Menard with heated words and yelling, retrieved the loaded gun from his vehicle, pointed it at the group, walked toward them as they retreated to the building, shifted his aim to Mr. Menard and fired twice was sufficient to show that he "engaged in activity directed toward, and explicable as intended to result in, killing" Mr. Menard. Although there was no evidence that Mr. Ken and Mr. Menard had a relationship prior to being in the parking lot that day, the evidence that Mr. Menard made a racially derogatory comment, Mr. Ken was angry when he retrieved the gun and what followed was sufficient to give rise to a reasonable inference that he had a 'motive' to kill Mr. Menard. His deliberate acts of retrieving the loaded gun from the car, walking toward Mr. Menard as he retreated, and shifting his aim to point the gun directly at Mr. Menard further sup-

ported an inference that he reflected on, carefully thought about and weighed the considerations of what he was about to do. The State's evidence also gave rise to a reasonable inference that Mr. Ken retrieved the loaded gun from his vehicle, pointed it at Mr. Menard and fired twice in an intentional attempt to kill according to a preconceived design to take his life. Sufficient evidence was presented from which the jury could have reasonably concluded Mr. Ken was guilty of attempted first degree murder.[4]

### 2. Ineffective Assistance of Counsel

[¶ 26] In his brief to this Court, Mr. Ken asserted that he received ineffective assistance of counsel at trial in several ways, including that his counsel failed to timely file a motion for new trial. On this Court's remand, the district court found after an evidentiary hearing that trial counsel's performance was deficient because he failed to timely file the new trial motion and Mr. Ken was prejudiced because had the motion been timely filed it would have granted it as to the attempted first degree murder charge.

[¶ 27] Claims of ineffective assistance of counsel involve mixed questions of law and fact; consequently, our review is de novo. Sanchez v. State, 2011 WY 77, ¶ 40, 253 P.3d 136, 147 (Wyo.2011). For Mr. Ken to prevail on his claim, he must first establish that trial counsel's performance was deficient. Id. This requires a showing that counsel failed to render such assistance as would have been offered by a reasonably competent attorney. Id., citing Dettloff v. State, 2007 WY 29, ¶ 18, 152 P.3d 376, 382 (Wyo.2007). Under the second prong of the ineffectiveness test, Mr. Ken must also demonstrate that counsel's deficient performance prejudiced his defense. Id. That is, he must show

a reasonable probability exists that, but for counsel's deficient performance, the outcome would have been different. Id. If he fails to make the required showing of either deficient performance or prejudice, his ineffectiveness claim must fail. Id.

[¶ 28] On remand, the parties stipulated that trial counsel's motion for new trial was not filed within fifteen days of the verdict as required by W.R.Cr.P. 33. Citing U.S. v. Hilliard, 392 F.3d 981 (8th Cir.2004), the district court held trial counsel's failure to timely file the motion constituted deficient performance. In Hilliard, trial counsel failed to file a motion for new trial until forty-one days after the verdict. The federal rules of criminal procedure required the motion to be filed within seven days of the verdict. Considering the first prong of the ineffectiveness claim, the Court stated:

In determining whether counsel's performance fell below a constitutionally-acceptable standard, courts must distinguish claims that involve deficient performance from those which reflect permissible trial strategy. Strickland [v. Washington, 466 U.S. 668, 690–91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)]. While "we presume counsel's conduct to be within the range of competence demanded of attorneys under like circumstances, . . . [w]hen the appellant shows that defense counsel 'failed to exercise the customary skills and diligence that a reasonably competent attorney would exhibit under similar circumstances,' that presumption must fail." [citation omitted; emphasis in original].

The Court concluded:

In this case, there can be no serious argument that the performance of Hilliard's lawyer was acceptable. He admitted in

---

**4.** On remand, the district court viewed the evidence similarly when it ruled that Mr. Ken was not prejudiced by defense counsel's failure to timely file a post-trial motion for judgment of acquittal because, had the motion been timely filed, it would have been denied. The district court said:

There is evidence to support the State's view of Attempted First Degree Murder: the Defendant returned to his vehicle and armed himself with a firearm and [Mr. Menard] testified that the gun was pointed at him when the first shot

was fired. Viewing this evidence in the government's favor, giving all reasonable inferences to the government, and leaving the Defendant's evidence out, the motion to acquit was denied. Had [defense counsel] timely renewed this motion it would have again been denied for the same reasons.

The standard the district court applies in considering a motion for judgment of acquittal is essentially the same test we apply in considering the sufficiency of the evidence.

deposition testimony that he failed to timely file a motion for a new trial because he misapprehended the filing deadline. Not filing a dispositive motion, particularly when directed to do so by the district court, is a classic dereliction of an attorney's obligation to provide his client with the type of performance required by the Sixth Amendment.

*Hilliard*, 392 F.3d at 986.

[¶ 29] As in *Hilliard*, courts in other jurisdictions have found deficient performance where counsel failed to timely file a motion for new trial. *See, for example, Louberti v. State*, 895 So.2d 479, 481 (Fla. Dist.Ct.App.2005); *Dorsey v. State*, 156 S.W.3d 825, 833 (Mo.Ct.App.2005); *Wallace v. State*, 121 S.W.3d 652, 657 (Tenn.2003). We agree with these decisions. The parties in the present case stipulated that defense counsel filed the motion for new trial after the time for filing such a motion had expired. While a motion for new trial is not required in every case, in cases where one is filed it must be filed within the time permitted by the rules. Not filing a new trial motion within the time permitted constitutes a failure to exercise the customary skills and diligence that a reasonably competent attorney would exhibit under similar circumstances and is a dereliction of an attorney's obligation to provide his client with the type of performance required by the Sixth Amendment.

[¶ 30] In *Hilliard*, after the jury rendered its verdict, the trial court reminded defense counsel to check the rules for the requirements and time frames for filing post-trial motions. The district court in the present case gave no such reminder. This factual difference does not change our determination that Mr. Ken's counsel performed deficiently in failing to timely file the motion. A reasonably competent attorney does not need reminding by the court of his obligation to timely file post-trial motions. We turn to the second prong of the ineffectiveness test.

[¶ 31] In addition to showing that trial counsel's performance was deficient Mr. Ken must show a reasonable probability exists that, but for the deficient performance, the outcome would have been different. In the context of the new trial motion, Mr. Ken must show a reasonable probability exists that if counsel had timely filed the motion, it would have been granted. On this Court's W.R.A.P. 21 remand, the district court found that if defense counsel had timely filed the motion, it would have granted Mr. Ken a new trial on the attempted first degree murder charge in the interest of justice pursuant to W.R.Cr.P. 33(a). It is in the context of this factual finding that we must determine whether Mr. Ken was prejudiced by counsel's deficient performance. We conclude that he was. Had the motion been timely filed the district court would have granted it, the State would have had no means to challenge the order and Mr. Ken would have received a new trial on the attempted first degree murder charge.

[¶ 32] In Wyoming, the prosecution in a criminal case does not have the right of direct appeal. *Crozier v. State*, 882 P.2d 1230, 1236 (Wyo.1994). Consequently, the State would have had no ability to appeal the entry of an order granting Mr. Ken a new trial. The exclusive means available to the State to challenge an adverse ruling in a criminal case is by filing a bill of exceptions in accordance with Wyo. Stat. Ann. §§ 7–12–102 and 103 (LexisNexis 2011) or by filing a petition for writ of review pursuant to W.R.A.P. 13. *State v. Newman*, 2004 WY 41, ¶ 23, 88 P.3d 445, 453 (Wyo.2004); *Crozier*, 882 P.2d at 1236.

[¶ 33] Pursuant to §§ 7–12–102 and –104 respectively, bills of exception are limited to decisions made "*during* the prosecution of a criminal case," and any decision by this Court on a bill of exceptions governs similar and future cases but does not affect the judgment in the case in which the bill of exceptions was taken. An order granting a new trial after a jury verdict is not a decision made during the prosecution of a criminal case. Even if it were and if, upon entry of the order in Mr. Ken's case, the State had filed a bill of exceptions, any decision by this Court would have governed similar and future cases but would not have affected Mr. Ken's right to a new trial. Writs of review are granted only when the State has no other adequate remedy, the issues presented are of

constitutional magnitude and public importance, and it is clear that allowing the writ will not place the defendant in jeopardy for a second time. *Newman*, ¶ 23, 88 P.3d at 453. Had the motion for a new trial been timely filed in this case, and had the district court granted it as it found on remand that it would have done, it is unlikely the State could have met the test for obtaining a writ of review. The State has not provided, nor have we found, any precedent in a criminal case for allowing a petition for writ of review of a trial court's order granting a defendant a new trial on the basis of ineffective assistance. An order granting a new trial on the grounds of ineffective assistance is simply not the sort of issue contemplated by W.R.A.P. 13.

[¶ 34] We hold that Mr. Ken received ineffective assistance of counsel and remand the case to the district court for entry of an order granting Mr. Ken a new trial on the attempted first degree murder charge.[5]

KITE, C.J., delivers the opinion of the Court; GOLDEN, J., files a concurring in part and dissenting in part opinion, in which VOIGT, J., joins; VOIGT, J., files a concurring in part and dissenting in part opinion, in which GOLDEN, J., joins.

GOLDEN, Justice, concurring in part and dissenting in part, in which VOIGT, Justice, joins.

[¶ 35] I agree with the Court's holding that Mr. Ken is not entitled to a judgment of acquittal because the State presented sufficient evidence at trial to support the jury's attempted first degree murder conviction. However, I respectfully dissent from the Court's decision that (1) Mr. Ken's trial counsel performed deficiently by failing timely to file a post-verdict motion for new trial pursuant to W.R.Cr.P. 33(a) on grounds that the jury's verdict was against the great weight of the evidence and a miscarriage of justice occurred, and (2) a reasonable possibility ex-

isted that, but for that deficient performance, the outcome would have been different. I would affirm Mr. Ken's conviction.

[¶ 36] In the motion for remand under W.R.A.P. 21 filed in this Court, Mr. Ken identified trial counsel's untimely filing of the post-verdict motions but did not state any W.R.Cr.P 33(a) grounds. At the limited remand hearing, those grounds were not explored in any detail and no testimony was taken with respect to them. Although Mr. Ken's trial counsel testified at that hearing, I find no questioning of him or testimony by him addressing why he did not timely file the motions. On these matters, the record before this Court is blank. I would have thought that Mr. Ken had the burden of proof on the issue in the remand hearing, and I think he failed to carry it at that hearing and, consequently, in this Court as well. I acknowledge *Hilliard* cited by the Court for the proposition that trial counsel's failure timely to file a post-verdict motion for new trial **after having been instructed to do so by the trial court that expressed grave reservations about the verdict** constitutes deficient performance. 392 F.3d 981, 984–86. But that is not this case, as the Court acknowledges. That significant factual difference does not change the Court's determination that Mr. Ken's trial counsel's failure constituted deficient performance, but I think it should. Absent from both the trial court's decision after the remand evidentiary hearing and this Court's opinion is any consideration of whether a reasonable and prudent criminal defense counsel, **under the same or similar facts and circumstances faced by Mr. Ken's trial counsel,** would surely have filed a post-verdict motion for new trial on W.R.Cr.P. 33(a) grounds. Under the analysis required by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and our precedent following that decision, we must keep in mind:

> A fair assessment of attorney performance requires that every effort be made to elim-

---

**5.** While the double jeopardy clause bars re-trial after a reversal based upon the prosecution's failure to produce sufficient evidence to prove its case, re-trial is not barred when the trial court concludes the verdict is against the weight of the

evidence. *Tibbs v. Florida,* 457 U.S. 31, 42 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); *U.S. v. Lossiah,* 271 Fed.Appx. 721 (10th Cir.2008); *Peak v. Acuna,* 203 Ariz. 83, 50 P.3d 833, 835 (2002).

inate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]

*Strickland,* 466 U.S. at 689, 104 S.Ct. at 2067.

[¶ 37] Evaluating the reasonable trial counsel's perspective when the jury returned Mr. Ken's guilty verdict, I think counsel knew the evidence against Mr. Ken was the same strong evidence which this Court has recounted in paragraphs 20–22 of the opinion: an angry Mr. Ken purposely aimed a loaded gun at Mr. Menard and fired twice. Reasonable trial counsel would have known that a W.R.Cr.P. 33(a) motion for a new trial (on grounds the verdict is against the great weight of the evidence and a miscarriage of justice has occurred) is granted only in exceptional circumstances and in the trial judge's exercise of discretion. *See, e.g.,* 3 Charles Alan Wright, Sarah N. Welling, *Federal Practice and Procedure* § 582 (4th ed. 2011); *United States v. McClellon,* 578 F.3d 846, 857 (8th Cir.2009) (trial court may grant new trial under Rule 33 only if the evidence weighs so heavily against the verdict that a miscarriage of justice may have occurred; although the trial court has broad discretion to grant a new trial under that rule, it must exercise that discretion sparingly and with caution). Given the State's strong evidence at trial and the trial court's silence when the jury's verdict was returned, unlike in *Hilliard,* can it truly be said that Mr. Ken's trial counsel's failure timely to file the new trial motion was so serious as to conclude the trial cannot be relied upon as having produced a just result? I cannot truly say so. Under such circumstances, the reasonable trial counsel would know that the chances of having the trial court exercise its discretion in favor of that counsel's Rule 33(a) motion would be slim and none. It would be the equivalent of football's "Hail Mary pass" in the last second of the fourth quarter with the losing team on its own five-yard line. I cannot accept the Court's holding that the reasonable trial counsel's failure to throw that desperation pass is deficient performance. Turning briefly to prejudice, the second prong of the *Strickland* analysis, I do not find the Court's extremely brief treatment of that issue satisfactory. Actually, there is no analysis. The Court states only that (1) at the remand hearing the trial court stated it would have granted the Rule 33(a) new trial motion had it been timely filed, and (2) "[w]e conclude that [Mr. Ken] was [prejudiced]." But this is nothing more than hindsight, which *Strickland* rejects.

[¶ 38] Finally, I fail to see the purpose in the Court's comments in paragraphs 32 and 33 of its opinion as no issues concerning those matters were presented in Mr. Ken's appeal.

VOIGT, Justice, concurring in part and dissenting in part, in which GOLDEN, Justice, joins.

[¶ 39] I join in Justice Golden's opinion concurring in part and dissenting in part. I write separately with a few additional comments.

[¶ 40] First, I agree with Justice Golden that trial counsel was not ineffective for failing to file a motion for new trial. There are two salient facts that should be the focus of this inquiry: First, as noted in the majority opinion, defense counsel's motion for judgment of acquittal was denied because the district court believed there was sufficient evidence from which a reasonable jury could find the appellant guilty beyond a reasonable doubt. Second, the majority, in its own analysis of the State's evidence, determines as follows:

[W]e conclude the jury reasonably could have concluded that Mr. Ken was angry, retrieved the gun and purposely aimed it at Mr. Menard. The jury also could reasonably have concluded that Mr. Ken fired the gun at Mr. Menard twice with the intent of killing him but, in the excitement of the moment, missed his target and hit the apartments off to the right of Mr. Menard.

*See supra* ¶ 22. Thus, the district court denied a motion for judgment of acquittal on the ground that the evidence was sufficient

to convict. This Court also believes the evidence was sufficient to convict. Yet, this Court finds trial counsel's performance deficient for not filing a motion for new trial on the ground that the "weight" of the evidence was not sufficient to convict. That is simply not reasonable. Furthermore, use of the district court's later comment that he would have granted the motion, as evidence of prejudice, is, as mentioned by Justice Golden, nothing but the use of hindsight. Defense counsel did not have the benefit of that hindsight.

[¶ 41] My additional concern here is the effect of W.R.Cr.P. 29 and 33 when the issue is sufficiency of the evidence. W.R.Cr.P. 29 governs motions for judgment of acquittal, which motions should be granted "if the evidence is insufficient to sustain a conviction...." W.R.Cr.P. 29(a). It is significant, in light of the procedural history of the instant case, that the district court "of its own motion shall order the entry of judgment of acquittal" where the evidence is insufficient to convict. *Id.* The test to be applied, as we have said innumerable times, is whether, looking only at the State's evidence, the district court can say that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *See, e.g., Lemus v. State,* 2007 WY 111, ¶ 47, 162 P.3d 497, 509 (Wyo.2007); *Mendoza v. State,* 2007 WY 26, ¶ 3, 151 P.3d 1112, 1113 (Wyo.2007); and *Burkhardt v. State,* 2005 WY 96, ¶ 9, 117 P.3d 1219, 1222–23 (Wyo. 2005). Most importantly, where "the State introduces evidence on its case-in-chief from which the jury may properly infer the essential elements of the crime, the State has then made out a 'prima facie case,' impregnable against a motion for acquittal." *Russell v. State,* 583 P.2d 690, 695 (Wyo.1978).

[¶ 42] Defense counsel moved for a judgment of acquittal at the end of the State's case. The district court denied the motion because the district court found that the evidence, when viewed in the light most favorable to the State, was sufficient to support an inference of the intent necessary to support an attempted first-degree murder conviction. Trial counsel did not timely move post-trial for a judgment of acquittal under W.R.Cr.P. 29. Furthermore, the district court stated upon remand that it would not have granted a motion for judgment of acquittal, so the district court must have continued to believe that there was sufficient evidence for a reasonable jury to find guilt. If that was not the district court's belief, the district court should have entered a judgment of acquittal upon its own motion.

[¶ 43] The significant difficulty in this scenario is that W.R.Cr.P. 33, if interpreted as the majority interprets it, allows a new trial to be granted "in the interest of justice," when the trial court judge disagrees with the "weight" given the evidence by the jury. Allowing the district court to reverse a jury verdict because the court disagrees with the weight of the evidence, where the court has already determined the evidence is sufficient to convict, violates the principle that jurors are the final arbiters of what weight to give to the evidence. We have said, probably dozens of times, that courts are not to second-guess the jury and that courts are not to reweigh the evidence. *See, e.g., Lemus,* 2007 WY 111, ¶ 47, 162 P.3d at 509; *Mendoza,* 2007 WY 26, ¶ 3, 151 P.3d at 1113; *Burkhardt,* 2005 WY 96, ¶ 9, 117 P.3d at 1223; *Leyo v. State,* 2005 WY 92, ¶ 16, 116 P.3d 1113, 1118 (Wyo.2005); *Harlow v. State,* 2005 WY 12, ¶ 41, 105 P.3d 1049, 1068 (Wyo.2005); *Mascarenas v. State,* 2003 WY 124, ¶ 3, 76 P.3d 1258, 1260 (Wyo.2003); *Johnson v. State,* 930 P.2d 358, 366 (Wyo.1996); *Trujillo v. State,* 880 P.2d 575, 578–79 (Wyo.1994); and *Mondello v. State,* 843 P.2d 1152, 1161 (Wyo.1992). In addition, we instruct the jury repeatedly that "it is the exclusive province of the Jury to weigh and consider all evidence...." Wyo. Criminal Pattern Jury Instructions 1.01, 1.02 (2004); *see also* Wyo. Criminal Pattern Jury Instruction 6.01 (2004). Apparently, that is not true; the weight to be given the evidence is not the exclusive province of the jury. Rather, even where the trial court has determined the evidence sufficient to convict, the trial court may reverse the jury's determination of guilt by reweighing the evidence. That is not right.

[¶ 44] The doctrine of *stare decisis* does not require Wyoming to follow those cases that allow the filing under F.R.Cr.P. 33 of a

motion that merely contests the weight given to the evidence by the jury. As noted above, the evidence is sufficient to support a guilty verdict if the evidence is sufficient for a quorum of reasonable jurors to have found guilt beyond a reasonable doubt, based upon that evidence. *See, e.g., Schuler v. State,* 2008 WY 47, ¶ 11, 181 P.3d 929, 932 (Wyo. 2008). If the evidence passes that test, it cannot also "preponderate heavily against the verdict" and, therefore, require reversal. *See United States v. Martinez,* 763 F.2d 1297, 1312–13 (11th Cir.1985). Similarly, if the evidence "contradicts indisputable physical facts or law," I fail to see how it is sufficient evidence upon which a jury could reasonably find guilt beyond a reasonable doubt. *See United States v. Kuzniar,* 881 F.2d 466, 470–71 (7th Cir.1989).

[¶ 45] We ought to make sense, not nonsense, of the law. W.R.Cr.P. 33(a) uses the phrase "in the interest of justice", but that phrase should not give the trial judge license to reweigh the evidence.[6] If the evidence was not sufficient for the jury to find guilt beyond a reasonable doubt, the district court should have entered a judgment of acquittal, upon its own motion if necessary. If the evidence was sufficient for the jury to find guilt beyond a reasonable doubt, then the district court has no business reversing that verdict and ordering a new trial based upon its own reweighing of the evidence. I would hold that a new trial motion under W.R.Cr.P. 33 cannot be based upon sufficiency of the evidence, or the weight given to evidence that has been found sufficient.

[¶ 46] I am curious as to what will happen in the new trial in the instant case if the State produces exactly the same evidence that it produced in the first trial. Inasmuch as that evidence has been determined to be sufficient for the case to be submitted to the jury, and therefore "impregnable" against a motion for judgment of acquittal, the district court must submit the case to the jury. If the jury again convicts, is the district court free once again to reweigh that evidence and grant yet another new trial?

[¶ 47] One additional point: I am concerned that the majority's discussion of the State's inability directly to appeal in a criminal case will now be indelibly inserted into the concept of ineffective assistance of counsel. Apparently, because the State cannot appeal to challenge the granting of a new trial motion, counsel will always be ineffective if he or she does not appeal from such a denial, or from the denial of any other motion which the State cannot appeal. Conversely, if the State could directly appeal the granting of a new trial, would that mean defense counsel was ***not*** ineffective for failing to file such motion? I agree with Justice Golden that this entire discussion should be omitted from the majority opinion.

---

**6.** Beyond that, because we do not know what weight the jury assigned to any particular piece of evidence, we do not even know if the trial court judge is "weighing" any particular piece of evidence differently than did the jury. What is really happening is that the trial court judge is saying that, in looking at all the evidence, he or she does not agree with the jury's verdict. Stated differently, what the trial court judge is saying is that "this evidence was sufficient for you to convict, but you should not have convicted."